UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REGINALD WAFFORD,     Case No. 1:09-cv-00805

    Plaintiff,     Barrett, J.
                Wehrman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING
BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED;
AND (2) THIS CASE BE CLOSED

This is a Social Security appeal filed by plaintiff, through counsel, proceeding pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). (*See* Administrative Transcript, Tr. at 19-29, ALJ's decision).

I.

Plaintiff filed applications for DIB and SSI on September 15, 2005, alleging a disability onset date of February 28, 2003, when he was 43 years old, due to heart problems, high blood pressure, diabetes, and back pain. (Tr. 34, 57-59, 355-57). After plaintiff's claims were denied initially and upon reconsideration, (Tr. 34-36, 38-40, 359-61, 363-65), plaintiff requested a hearing *de novo* before an ALJ. (Tr. 41). On August 29, 2008, an evidentiary hearing was held, at which plaintiff was represented by counsel. (Tr. 377). At the hearing, the ALJ heard testimony from plaintiff, Billy Green, a witness, and George Parsons, a vocational expert. (Tr. 377-429).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

1

On September 19, 2008, the ALJ entered his decision denying plaintiff's claim. (Tr. 16-29). The Appeals Council denied plaintiff's request for review on September 3, 2009. (Tr. 6-8). Thus, the ALJ's decision stands as the defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since February 28, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

   …………………….

3. The claimant has the following severe combination of impairments: history of atrial fibrillation, left ventricular hypertrophy, morbid obesity, obstructive sleep apnea, hypertension, diabetes mellitus II, and low back pain (20 CFR 404.1520(c) and 416.920 (c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders/ropes/scaffolds, can occasionally stoop and crouch; he should avoid even moderate exposure to hazardous machinery, unprotected heights, or commercial driving; and he should have minimal interaction with supervisors, is limited to one and two step instructions and routine/repetitive tasks, and should avoid a consistently rapid pace.

   ……………………..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   …………………………

    7.       The claimant was born on August 4, 1959 and was 43 years old, which is defined as a younger individual aged 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

    8.       The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

    …………………………

    11.     The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-28). In summary, the ALJ concluded that plaintiff was not under disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 29).

On appeal, plaintiff maintains that the ALJ erred by: (1) failing to give sufficient weight to the opinion of his treating chiropractor; (2) relying on the vocational expert (VE) testimony that was inconsistent with the Dictionary of Occupations (DOT) listings; (3) failing to resolve inconsistencies between the VE testimony and the DOT listings; (4) failing to adequately explain his residual functional capacity ("RFC") findings; (5) finding that plaintiff was not fully credible regarding his symptoms; and (6) disregarding the testimony of witness, Billy Green. (Doc. 8).

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the ALJ is guided by the following sequential benefits analysis: at Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, the burden of proof shifts to the ALJ, and after it is established that the claimant can no longer perform his or her past relevant work, the ALJ determines whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Gwizdala v. Commissioner of Soc. Sec.*, No. 98-1525, 191 F.3d 452, at *2 n.1 (6th Cir. Sept. 16, 1999) (unpublished, *per curiam*, text available at 1999 WL 777534).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Accordingly, the claimant must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

Plaintiff argues that the ALJ erred in failing to give the opinion of his chiropractor, Dr. Gulla, sufficient weight. (Doc. 8, at 9-11). He contends that although he was not an "acceptable medical source," as defined in 20 C.F.R. § 404.1513(a), his opinion was valuable because he treated plaintiff for "five years".[2] (*Id.* at 9-10). Referring to 20 C.F.R. § 404.1513(d) and SSR 06-3p as support, plaintiff argues that the ALJ should have given weight to the chiropractor's opinion.

Under 20 C.F.R § 404.1527(d)(2), the ALJ must afford great weight to a treating doctor's opinion. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). However, the regulation only applies to opinions rendered by one of the five types of "acceptable medical sources" listed in 20 C.F.R. § 404.1513(a) and chiropractors are not included. *Id.* Because chiropractors are not considered an "acceptable medical source," it is in the ALJ's discretion whether to give weight to a chiropractor's opinion, in light of the other evidence in the record. *Walters*, 127 F.3d at 530.

Here, the ALJ acknowledged Dr. Gulla's findings, but did not afford any weight to Dr. Gulla's opinion because he was not an "acceptable medical source." (Tr. 24). The ALJ properly

---

[2] The record indicates that Dr. Gulla only treated plaintiff from May through July, 2008. (Tr. 337-40). It appears that another chiropractor, Dr. Dhaliwal, treated plaintiff from September, 2003 through April, 2004. (Tr. 309-331). There is no record of plaintiff receiving any chiropractic care between April, 2004 and May, 2008.

5

considered and gave weight to the MRI contained in Dr. Gulla's records because an MRI is an "acceptable medical source." (Tr. 25). The ALJ determined that the MRI demonstrated some mild spinal narrowing, but no nerve root compression, as alleged by plaintiff. (*Id.*; See also Tr. 300-01). In addition, the ALJ determined that plaintiff's clinical signs were not consistent with the MRI. (*Id.*)

The ALJ did not commit error by failing to give weight to Dr. Gulla's opinion because it was within his discretion to determine the appropriate weight to accord a non-medical source. Furthermore, the ALJ properly considered the "acceptable source," the MRI, which was contained in Dr. Gulla's file. After determining that the MRI did not support Dr. Gulla's opinion that plaintiff has radiculitis in both legs or suffers from nerve root compression, the ALJ appropriately gave greater weight to the MRI than to Dr. Gulla's opinion.

**B.**

Plaintiff claims that the ALJ erroneously found that there were a significant number of jobs in the national economy that plaintiff could perform. (Doc. 8, at 11-19). Specifically, Plaintiff alleges that the ALJ relied on VE testimony that was inconsistent with the job descriptions in the DOT, failed to resolve the inconsistencies between the VE's testimony and the DOT, and failed to adequately explain his residual functional capacity findings. (*Id.*)

Plaintiff maintains that the ALJ erred in relying on the vocational expert's testimony regarding the availability of jobs which plaintiff could perform because there were inconsistencies between the VE's testimony and the job descriptions in the Dictionary of Occupational Titles (DOT). (Doc. 8, at 14-16). Plaintiff alleges that: (1) the VE incorrectly classified two jobs, electronic assembler and electronic inspector, as unskilled;[3] (2) the VE

---

[3] The record does not support this assertion. Mr. Parsons, the vocational expert, did not testify to the skill level of electronic assembler. Further, he did not mention "electronics inspector" or 726.381-010. (*See* Tr. 413-19).

6

referenced the wrong DOT listing for "general laborer"; (3) the VE referenced non-existent DOT listings for sedentary inspector[4] and sedentary electric assembler[5]; (4) the VE improperly identified cook, light packer, light electric assembler as potential jobs because the DOT provided that those jobs would expose plaintiff to hazardous machinery in violation of plaintiff's residual functional capacity. (*Id.*)

When a VE refers to DOT job descriptions in testifying about the availability of suitable jobs for a claimant, the ALJ and the VE "are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). Thus, the DOT job descriptions do not "necessarily trump[]" the VE's testimony. *Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008). The DOT lists "maximum requirements of occupations as they are generally performed" and a VE can provide more specific information about a job. *Benlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168 (6th Cir. 2009) (citing SSR 00-04p). As the Sixth Circuit has explained,

> [N]ot all occupations are included in the DOT, and the VE may use terminology that differs from the terms used in the DOT. *See* [*Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009)] ('The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence.').... [T]he mere fact that the DOT does not list occupations with [the] precise terms [used by the VE] does not establish that they do not exist.

*Benlich*, 345 Fed. App'x at 168. Thus, there is not necessarily a conflict simply because the VE identifies a job that is not identified with that exact name in the DOT. *Id.*

Here, most of plaintiff's claims that the VE testimony was inconsistent with the DOT listings are meritless. Many of the arguments are based in the theory that the VE must use

---

[4] Plaintiff claims that DOT § 539.485-010 does not exist. The listing does, in fact, exist.
[5] The DOT identified by the VE is actually titled "stem mounter," which appears to be a specific type of electronic assembler occupation.

7

identical terminology as the DOT. However, in some instances the VE used a more general occupation category and referenced specific DOT job listings in that occupation. For example, the VE identified a sedentary "electronic assembler" as a potential occupation for plaintiff, but referenced the DOT number for "stem mounter," a specific type of electronic assembly job.[6] Additionally, plaintiff contends that some of the jobs would involve hazardous machinery or would expose him to unprotected heights, but that is not supported by the DOT.[7] Some DOT listings describe machinery used in the process, but also provide that a worker may perform any combination of a long list of tasks, meaning that plaintiff could perform tasks that do not involve any hazardous machinery. Thus, the VE did not necessarily contradict the DOT listings, but instead provided more specific job information.

Plaintiff claims that the ALJ erred because he did not resolve the conflict between the VE's testimony and DOT descriptions, as required by Social Security Ruling 00-4p. (Doc. 8, at 16). To the contrary, the record reflects that the ALJ did ask the VE if any of his testimony was inconsistent with the DOT and the VE responded that he was explaining the differences. (Tr. 414).

Furthermore, plaintiff's argument fails because he failed to alert the ALJ to any inconsistencies at the hearing. The ALJ is not required "to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford*, 311 Fed. App'x at 757. Because plaintiff did not object to the conflicts at the hearing, the ALJ had no duty to explain how any conflict was resolved. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x

---

[6] DOT listings starting in 725 are titled "occupations in assembly of light bulbs and electronic tubes" and "stem mounter" starts with 725.
[7] Stem mounter, DOT 725.684-018, involves "revolving table" not hazardous machinery.

8

369, 374-75 (6th Cir. 2006). Because plaintiff did not raise the conflicts at his hearing when he had the opportunity to cross-examine the VE, he cannot raise them now.

Finally, to the extent that the VE's testimony conflicts with the DOT job descriptions, plaintiff failed to demonstrate harmful error. *See Shineski v. Sanders*, ___ U.S. ___, 129 S. Ct. 1696, 1706 (2009) (placing burden of proving that error was harmful on claimant). As long as there is substantial evidence that at least one occupation is suitable for the claimant, any error caused by a conflict with the DOT is harmless. See *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x at 374-75 (finding that one potential position with 870 local jobs available was significant number of jobs); *Stewart v. Sullivan*, No. 89-6242, 904 F.2d 708, at *4 (6th Cir. June 6, 1990) (unpublished, per curiam, text available at 1990 WL 75248) (finding that 125 jobs locally was a significant number of jobs). There is no requirement that there are potential jobs available in the immediate area where plaintiff lives, as long as there are jobs available nationally and are not all concentrated in one region. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (citing 20 C.F.R. § 416.966).

Although plaintiff disputes that he is capable of performing some of the occupations that the VE recommended, the VE also identified a significant number of jobs existing in the national economy that plaintiff does not dispute. The VE identified the following jobs that were not contested by plaintiff: sedentary food and beverage order clerk with 201 jobs in the local economy and 18,000 in the national economy; sedentary security monitor with 101 jobs in the local economy and 14,000 jobs in the national economy; light security monitor with 97 jobs in the local economy and 13,000 jobs in the national economy; and sedentary packer with 128 jobs in the local economy and 13,000 jobs in the national economy. (Tr. 413). In total, the VE identified 527 jobs available locally and 18,000 jobs available nationally which plaintiff has not

9

challenged.  Thus, there are still a significant number of jobs available to plaintiff, even accepting plaintiff's allegations regarding the inconsistency between the VE testimony and the DOT job descriptions.

Plaintiff also argues that the ALJ's finding that plaintiff has the residual functional capacity to perform light work is not supported by substantial evidence.  (Doc. 8, at 16-19).  Specifically, plaintiff argues that the judge did not properly consider his severe sleep apnea, heart condition, and his necessity to elevate his legs.  (*Id.* at 18).  Because of these conditions, plaintiff contends that he is unable to perform the full range of sedentary work.  (*Id.*)

Substantial evidence supports the ALJ's finding that plaintiff has the RFC to perform light work with some exceptions.[8]  In making this determination, the ALJ properly considered plaintiff's sleep apnea, heart condition, and necessity to elevate his legs.

First, the ALJ reasonably considered plaintiff's heart condition.  The RFC assessment provided:  "[A]fter the claimant's hospitalization in July 2005, the claimant's atrial fibrillation and left ventricular hypertrophy is barely mentioned in the record.  The evidence shows no recurrent arrhythmias, syncope, or other recurring symptoms, and testing has also shown no evidence of reversible ischemia or an infarct."  (Tr. 24).

Substantial evidence supports the ALJ's finding that plaintiff can perform light work, in consideration of his heart condition.  Plaintiff was hospitalized in July 2005 for atrial fibrillation, but there was no evidence of ischemia or infarct.  (Tr. 174, 225).  Further, plaintiff's atrial fibrillation is controlled with a beta blocker.  (Tr. 196).  Plaintiff also admitted that he has not had much chest pain since he has started medication.  (Tr. 99).

---

[8] ALJ made the following exceptions:  "he can never climb ladders/ropes/scaffolds, can occasionally stoop and crouch; he should avoid even moderate exposure to hazardous machinery unprotected heights, or commercial driving; and he should have minimal interaction with supervisors, is limited to one and two step instructions and routine/repetitive tasks, and should avoid a consistently rapid pace."  (Tr. 23).

10

There is some medical support regarding plaintiff's high blood pressure. Dr. Simon recommended that plaintiff refrain from performing strenuous work due to his uncontrolled blood pressure. (Tr. 26). Accordingly, the ALJ included Dr. Simon's opinion and limited his RFC to light work. Therefore, the ALJ reasonably considered plaintiff's heart condition and substantial evidence supports his finding that plaintiff can perform light work, even to the extent he has a heart condition.

Second, the ALJ reasonably considered plaintiff's sleep apnea in making the RFC finding. The ALJ acknowledged that the sleep apnea was diagnosed as severe, but found that it was not demonstrated to have lasted continuously for twelve months. (Tr. 25). Further, the ALJ confirmed that the plaintiff planned on using a sleep apnea device, and expected it to help him. (Tr. 25, 387). Thus, the ALJ determined that the sleep apnea is not expected to last for twelve continuous months once the plaintiff starts treatment. (Tr. 25). Nonetheless, the ALJ stated "[b]ecause . . . obstructive sleep apnea is found to be a severe impairment, the undersigned adds that the claimant should avoid even moderate exposure to hazardous machinery, unprotected heights, and commercial driving." (Tr. 26).

The ALJ properly considered plaintiff's sleep apnea. Although plaintiff did not demonstrate that the sleep apnea will last for twelve continuous months after he begins treatment, the ALJ still imposed additional restrictions of avoiding hazardous machinery and unprotected heights. Therefore, the ALJ's finding that the plaintiff can perform light work with restrictions was supported by substantial evidence.

Finally, the ALJ reasonably considered plaintiff's claim that he needed to elevate his legs. In the hearing, plaintiff claimed that his chiropractor, Dr. Gulla, had told him to keep his feet elevated as much as possible. (Tr. 401). However, this claim is not

substantiated anywhere in the record. There is no indication that Dr. Gulla told plaintiff that he needed to elevate his legs in any of Dr. Gulla's treatment notes. (*See* Tr. 337-40). Further, in 2003, plaintiff's first chiropractor, Dr. Dhaliwal, recommended that plaintiff was capable of returning to work with the only limitation being that he did not lift more than 15-20 pounds. (Tr. 322). Without presenting any objective medical evidence regarding the need to elevate his legs, the ALJ reasonably determined that this claim did not affect plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(b). Therefore, substantial evidence supports the ALJ's decision that plaintiff could perform light work.

## C.

Plaintiff also claims that the ALJ erroneously concluded that the plaintiff's testimony was only partially credible. (Doc. 8, at 19-22). The ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. 23). In making his RFC findings, the ALJ stated:

> The claimant was partially but not fully credible regarding his symptoms. As previously noted, the claimant testified that he was only occasionally noncompliant with medication, but the record shows otherwise. A witness for the claimant, a friend named Billy Green, also testified that the claimant did not take his medication regularly secondary only to child support obligations. This is no where documented, and it is inconsistent with the claimant's testimony. The claimant also does not have an impressive earnings record, and no inference can be made that the claimant would work if he could.

(Tr. 25).

Plaintiff denies that he was simply noncompliant with medication. (Doc. 8 at 19). Instead, he argues that he could not afford his medication. (*Id.*) Further, plaintiff contends that he

12

has a good work history. (*Id.*) Thus, the plaintiff alleges that the ALJ committed error by only affording him partial credibility based on these two factors.

An ALJ may assess the claimant's credibility. See generally *Walters v. Com. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant where there are contradictions among the medical records, claimant's testimony, and other evidence. *Warner v. Com. of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, there were contradictions between the plaintiff's testimony and the medical records. Plaintiff testified that he was only noncompliant with medication for two or three months since 2003. (Tr. 409-10). However, plaintiff's doctors documented his noncompliance with medications far beyond a three month period. (*E.g.*, Tr. 161, 236, 245, 247, 253, 257, 259, 260-61, 263, 268-69, 279).

Further, plaintiff claims that he did not consistently take his medication because he was unable to afford it. Although the record contains fleeting references to plaintiff's inability to pay for medications, there is also substantial evidence in the doctors' notes that plaintiff was noncompliant with his medications for reasons unrelated to the costs. Plaintiff's claim that he could not afford medication due to his child support obligations was appropriately discounted since there is no evidence of child support obligations in the record. Therefore, substantial

evidence supports the ALJ's credibility finding that plaintiff's testimony was contradicted by the medical records. *See Warner*, 375 F.3d at 392.

Additionally, plaintiff contends that he has a good work history, emphasizing that he worked at the Thoroughbred Association for twelve years. (Doc. 8, at 19). However, the record reflects that the employment occurred more than twenty years ago. (Tr. 398). Plaintiff's reliance on Dr. Leisgang's report that plaintiff had a "productive work history," is misplaced since Dr. Leisgang relied solely on plaintiff's report of his job at the Thoroughbred Association. (Tr. 201). The record reflects that plaintiff has had many jobs from the 1990's until 2005, many of which lasted less than a year or were part-time and not consistent employment (Tr. 63-69, 76-87, 100-07, 383-86). In 2003 and 2004, plaintiff held multiple jobs that lasted from a few hours to six months. (Tr. 76-87). Thus, substantial evidence supports the ALJ's finding that plaintiff did not have an impressive earnings record.

In assessing a claimant's credibility, the claimant's work history and efforts to work are factors for the ALJ to consider. *See* 20 C.F.R. 404.1529(a); SSR 96-7p, *available at* 1996 WL 374186, at *5. Because substantial evidence supports the ALJ's findings that plaintiff had a weak employment history, it was proper for the ALJ to also conclude that plaintiff's statements about his pain and symptoms were only partially credible. The ALJ stated his reasons for finding plaintiff only partially credible regarding his symptoms and substantial evidence supports the ALJ's reasons. Therefore, the Court must defer to the ALJ's credibility determination. *Walters*, 127 F.3d at 531.

## D.

Finally, plaintiff alleges that the ALJ erroneously disregarded the testimony of his witness, Billy Green. (Doc. 8, at 22-23). However, the ALJ specifically discussed Billy Green's

14

testimony, including her statements regarding plaintiff's sleep apnea symptoms and back pain. (Tr. 24). The ALJ also referenced Billy Green's testimony in finding that claimant was only partially credible. (Tr. 25). Therefore, plaintiff's claim is meritless because it is unsupported by the record.

Alternatively, even if the ALJ erroneously disregard Billy Green's testimony, plaintiff's argument fails because he has failed to demonstrate harmful error. *See Shineski v. Sanders*, 129 S. Ct. at 1706. As discussed above, the ALJ reasonably considered plaintiff's sleep apnea and limited his RFC to "avoid even moderate exposure to hazardous machinery, unprotected heights, or commercial driving." (Tr. 23). Therefore, whether or not the ALJ gave Billy Green's testimony any weight, his RFC finding is reasonable.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED**.
2. As no further matters remain pending for the Court's review, this case should be **CLOSED**.

This 18th day of August, 2010.

Signed By:
J. Gregory Wehrman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**REGINALD WAFFORD**                                  Case No. 1:09-cv-805

    **Plaintiff,**                                                        Barrett, J.
                                                                                   Wehrman, M.J.
**vs.**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### NOTICE

Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).